UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br>v.<br><br>REAL PROPERTY LOCATED<br>AT 11015 WEST 9 MILE RD.,<br>MISSION, TEXAS<br>Defendant | §<br>§<br>§   CIVIL ACTION NO. _____<br>§<br>§<br>§<br>§<br>§ |

## COMPLAINT FOR FORFEITURE IN REM

The United States of America files this action for forfeiture and alleges upon information and belief:

### Nature of the Action

1. This is an action to forfeit property to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), 18 U.S.C. § 1957(a), 21 U.S.C. §§ 881(a)(6) and (7).

### Defendant Property

2. The Defendant Property is the real property, including all improvements and appurtenances, located at 11015 West 9 Mile Rd., Mission, Texas 78573 and legally described as follows (hereinafter, the "Defendant Property"):

> A TRACT OF LAND CONTAINING 5.0 ACRES BEING THE EAST 5.0 ACRES OF THE WEST 19.24 ACRES OF LOT 56-4 WEST ADDITION TO SHARYLAND SUBDIVISION OF PORCIONES 53-57, RECORDED IN VOLUME 1, PAGE 56, HIDALGO COUNTY MAP RECORDS, HIDALGO COUNTY, TEXAS AND BEING MORE PARTICULARY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:
>
> **BEGINNING** AT A POINT IN THE NORTH LINE OF SAID LOT 56-4 AND THE CENTERLINE OF 9 MILE LINE ROAD SAID

POINT BEING 081°28'19" E A DISTANCE OF 469.51 FEET FROM THE N.W. CORNER OF SAID LOT 56-4 FOR THE N.W. CORNER OF THIS TRACT;

**THENCE** S 81°28'19" E A DISTANCE OF 165.0 FEET ALONG THE NORTH LINE OF LOT 56-4 AND CENTERLINE OF SAID 9 MILE LINE ROAD FOR THE N.E. CORNER OF THIS TRACT;

**THENCE** S 08°31'41" W AT A DISTANCE OF 20.0 FEET PAST AN IRON ROD FOUND IN THE SOUTH LINE OF SAID 9 MILE LINE ROAD A TOTAL DISTANCE OF 1319.74 FEET ALONGTHE EAST LINE OF SAID 19.74 ACRE TRACT AND THE WEST LINE OF UNITED IRRIGATION CANAL R.O.W. TO AN IRON ROD FOUND FOR THE S.E. CORNER OF THIS TRACT:

**THENCE** N 81°28'19" W AT A DISTANCE OF 165.0 FEET ALONG THE SOUTH LINE OF SAID LOT 56-4 FOR THE S.W. CORNER IF THIS TRACT;

**THENCE** N 08°31'41" W AT A DISTANCE OF 20.0 FEET PAST AN IRON ROD FOUND IN THE SOUTH LINE OF SAID 9 MILE LINE ROAD A TOTAL DISTANCE OF 1319.74 FEET ALONGTHE EAST LINE OF SAID 19.74 ACRE TRACT AND THE WEST LINE OF UNITED IRRIGATION CANAL R.O.W. TO AN IRON ROD FOUND FOR THE S.E. CORNER OF THIS TRACT:

**THENCE** N 81°28'19" W AT A DISTANCE OF 165.0 FEET ALONG THE SOUTH LINE OF SAID LOT 56-4 FO RTHE S.W. CORNER IF THIS TRACT;

**THENCE** N 08°31'41" E AT A DISTANCE OF 1300.0 FEET PAST AN IRON FOUND IN THE SOUTH LINE OF SAID 9 MILE LINE ROAD A TOTAL DISTANCE OF 1319.74 FEET TO THE PLACE OF BEGINNING SAID TRACT CONTAINING 5.0 ACRES MORE OR LESS.

### *Jurisdiction and Venue*

3. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355(b)(1), 1391(b), and 1395.

### *Statutory Basis for Forfeiture*

5. The Defendant Property is subject to forfeiture under:

   a. 21 U.S.C. § 881(a)(6), which provides for the forfeiture of "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*]."

   b. 18 U.S.C. § 981(a)(1)(A) incorporating 1956(a)(1)(B)(i), which provides for the forfeiture of property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960 or any property traceable to such property. Under 18 U.S.C. § 1956(a)(1)(B)(i), it is unlawful for a person to conduct or attempt to conduct a financial transaction with proceeds of a specified unlawful activity knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity or to avoid a transaction reporting requirement under federal or state law.

   c. 18 U.S.C. § 981(a)(1)(A) incorporating 18 U.S.C. § 1957(a), which provides for the forfeiture of property, real or personal, involved in a transaction or

attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960 or any property traceable to such property. It is a violation of 18 U.S.C. § 1957 for a person to knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and that is derived from specified unlawful activity. The felonious sale of controlled substances constitutes a "specified unlawful activity" under 18 U.S.C. § 1956(c)(7)(A), which incorporates 18 U.S.C. § 1961(1)(D).

d. 21 U.S.C. § 881(a)(7), which provides for the forfeiture of all real property, including any right, title, and interest. . .in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of [the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*]."

***Factual Basis***

1. Anibal Briones (Briones) distributed synthetic cannabinoid products and a Fentanyl analog in violation of the Controlled Substances Act.

2. Briones was arrested on December 13, 2018, and subsequently indicted for conspiracy to possess with intent to distribute and possession with intent to distribute 100 grams or more of a Fentanyl analog in criminal case 7:19-cr-00005. He pleaded guilty to the conspiracy charge on June 18, 2019 and his sentencing is currently pending.

3. During the execution of a search warrant at the Defendant Property in December 2018, agents located various narcotics, numerous scales, a heat sealer, wrapping materials, and $61,202 bulk currency packaged consistent with drug proceeds throughout the residence. Agents also located eight firearms and numerous boxes of ammunition throughout the master bedroom.

Some of the firearms were loaded with full magazines and equipped with tactical lights. Agents seized a security camera system, which surveilled the outside of the property and the surrounding area. Agents also believe that Briones utilized the home security system and firearms to protect the narcotics and drug proceeds from law enforcement and/or other drug traffickers.

4. Additionally, agents located a shed that resembled a church on the property. A search of the shed revealed large quantities of precursor chemicals used to produce spice/K2, blenders, a spray gun, gloves, Ziploc bags, and two computer monitors. Agents observed that the items found inside the shed were consistent with a synthetic marijuana laboratory.

5. A cooperating defendant told agents that he/she had traded marijuana to Briones for synthetic marijuana on multiple occasions. The cooperating defendant stated that Briones has been manufacturing synthetic marijuana since before they met in 2016. The cooperating defendant further stated that Briones worked with Simon Rivera ("Rivera") to manufacture and distribute synthetic marijuana. Law enforcement databases showed numerous wire transfers from Rivera and Ignacio Briones, Briones' brother, to individuals in China from 2015 to 2017 believed to be related to the purchase of narcotics. According to eBay records, two eBay accounts are associated with Briones and Ignacio Briones. These accounts are believed to be utilized for drug trafficking purposes from 2011 to 2015. The eBay records showed numerous items bought and sold related to the manufacturing and distribution of narcotics including: synthetic marijuana packaging material, bulk herbs commonly used to produce spice/K2, empty gelatin capsules, a capsule filling machine, vacuum sealer, digital scales, and rolling papers.

6. In December 2018, agents executed a search warrant at Briones' storage unit in Mission, TX. A search of the storage unit revealed large quantities of Ziploc bags used to package synthetic marijuana, packaging material with Chinese writing, and numerous documents related to

the Defendant Property. Lease agreement records further showed that Briones and Ignacio Briones both had access to the storage unit.

7. On March 15, 2015, a notarized written agreement was prepared between Briones and Elias and Victoria Gonzalez. In the agreement, the Gonzalezes agreed to subdivide and sell five acres (Defendant Property) of their land to Briones. The agreement states Briones paid $10,000 on March 25, 2015, and would pay an additional $66,000 once the subdivision and paperwork was finalized. The agreement was notarized on April 15, 2015, and signed by the Gonzalezes. On July 15, 2015, the Gonzalezes gifted the real property via Special Warranty Deed to Briones' mother-in-law, Belinda Islas ("Islas").

8. On March 17, 2020, DEA agents interviewed Islas. Islas stated that the Defendant Property was purchased by her son-in-law, Briones. She stated that she was not present during purchase of the land, does not know how the property was paid for by Briones or who Briones bought it from. She stated that she was not present for the closing or signing of paperwork for the land. She stated that after Briones purchased the land, she found out her name was listed as the owner, but that she had no part in purchasing the land nor signed any paperwork. She stated that she does not know why her name was listed on the property deed. Islas stated she also had no participation in construction of the house on the Defendant Property. Islas stated that she had never met with the builder or had any say in construction of the house. She stated that she did not provide any money for payment of the land or house. Islas stated that the first time she saw the house was after it was close to being finished.

9. On September 20, 2019, DEA agents interviewed the builder of the property. The builder conveyed that the initial cost for the property was $147,000. Briones later requested a change order from the builder which resulted in an additional $11,997.67 to the total cost.

6

Payments by Briones were always in cash. The builder explained that Briones paid $5,000 in cash as a down payment followed by subsequent cash payments for the property. Although Islas was not involved in the construction of the house or the signing of the contract, the builder was instructed by Briones and Briones' wife to put the property in Islas' name.

10. Texas Workforce Commission records showed that Briones has no listed employment since 2013. Briones previously told agents that he worked for Islas' company, M.M. Services, however, Briones could not provide agents a description of his job, job title, or how much he was paid. Agents have not found any other evidence supporting that Briones worked for M.M. Services for an extended period of time. Briones' wife also has no listed employment from 2012 to Briones' arrest in 2018. Agents further observed that all vehicles utilized by Briones and Briones' wife are registered to other family members. Agents believe that Briones has attempted to launder and conceal drug proceeds through assets, including the Defendant Property.

### *Conclusion*

11. The Defendant Property is subject to forfeiture under 21 U.S.C. § 881(a)(6) as property traceable to proceeds of drug trafficking, under 18 U.S.C. § 981(a)(1)(A) as property involved in money laundering in violation of 18 U.S.C. § 1956 and/or § 1957, and under 21 U.S.C. § 881(a)(7) as property used or intended to be used, in any manner or part, to facilitate drug trafficking.

### *Notice to Any Potential Claimants*

YOU ARE HEREBY NOTIFIED that if you assert an interest in the Defendant Property which is subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions. The verified claim must be filed no later than thirty-five (35) days from the date this Complaint has been sent in accordance with Rule G(4)(b).

An answer or motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas at United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002, and a copy must be served upon the undersigned Assistant United States Attorney at United States Attorney's Office, 1000 Louisiana, Suite 2300, Houston, Texas 77002.

## *Prayer*

Wherefore, the United States of America prays that judgment of forfeiture be entered against Defendant Property in favor of the United States of America under 21 U.S.C. § 881(a)(6), 18 U.S.C. § 981(a)(1)(A), 18 U.S.C. § 1957(a), and 21 U.S.C. § 881(a)(7) in addition to such costs and other relief to which the United States of America may be entitled.

Respectfully submitted,

RYAN K. PATRICK
United States Attorney

By: /s/ Rick Blaylock
Rick Blaylock
Assistant United States Attorney
Texas Bar No. 24103294
Federal Bar No. 3544108
600 E. Harrison St., #201
Brownsville, TX 78520
Office: (956) 983-6007
Fax: (956) 548-2711

## *Verification*

I, Danielle Martin, a Special Agent with the United States Drug Enforcement Administration, hereby verify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the facts set forth in Paragraphs 1 through 11 of the Factual Basis in the foregoing Complaint For Forfeiture In Rem are true and correct to the best of my knowledge and belief.

Executed on ___June 5th___, 2020.

_____
Danielle Martin
Special Agent
U.S. Drug Enforcement Administration